IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADAM D.,[1]

           Plaintiff,                              **Civ. No. 6:19-cv-01285-MC**

      v.                                      **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,**

           Defendant.

_____

**MCSHANE, Judge**:

Plaintiff Adam D. was denied Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. He appeals to this Court, arguing that the Administrative Law Judge ("ALJ") erred by improperly discrediting his subjective symptom testimony and incorrectly weighing certain medical opinions. Because the Commissioner of Social Security's ("Commissioner") decision follows proper legal standards and is supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). A reviewing court will affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Id.*; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, diabetes mellitus, hypertension, elevated cholesterol, sleep apnea, and mental impairments variously described as a schizoaffective disorder, bipolar disorder, unspecified anxiety disorder, depression, panic disorder, thought disorder, and posttraumatic stress disorder ("PTSD"). Tr. 16.[2] At step three, the ALJ found that Plaintiff did not have an impairment or combination of

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

impairments that met or equaled any of the Listing of Impairments. Tr. 18–20. The ALJ assigned

Plaintiff the following RFC:

> [T]he claimant . . . [can] perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except he can perform tasks of a nature that can be learned within a
> short demonstration period of up to approximately 30 days with no more than
> frequent changes to the daily workplace tasks and duties. He can work primarily
> with things, rather than with people, such that his work contact with others is only
> on an occasional basis. He can maintain concentration, persistence, and pace at that
> limited range of tasks for two hours at a time, before taking regularly scheduled
> breaks, and then returning to work throughout the workday.

Tr. 20. Based on the vocational expert's testimony, the ALJ concluded Plaintiff could not perform

past relevant work but could perform other jobs that exist in significant numbers in the national

economy. Tr. 28–30. The ALJ thus determined that Plaintiff was not disabled. Tr. 30.

## I. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony.

An ALJ may reject testimony about the severity of a claimant's symptoms only by offering "clear

and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*,

278 F.3d 947, 959 (9th Cir. 2002). But the ALJ is not "required to believe every allegation of

disabling pain, or else disability benefits would be available for the asking, a result plainly contrary

to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation

omitted). The ALJ may "consider a range of factors," including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged
> symptoms; (2) whether the claimant takes medication or undergoes other treatment
> for the symptoms; (3) whether the claimant fails to follow, without adequate
> explanation, a prescribed course of treatment; and (4) whether the alleged
> symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d

1154, 1163 (9th Cir. 2014). The Court will uphold an ALJ's credibility finding even if all the

ALJ's rationales for rejecting clamant testimony are not upheld. *Batson*, 359 F.3d at 1197.

Plaintiff testified that he could not drive and the he had to receive rides from his sister or arrange a ride through his medical insurance. Tr. 43–44. Plaintiff resided with his mother and explained that a normal day consisted of light housework and watching television. Tr. 49–51, 53. Plaintiff struggled when outside his home and alleged severe anxiety because he felt like he was constantly being watched. Tr. 54, 56, 59. Plaintiff also alleged an inability to socialize with others. *Id.* To help alleviate his stress and help him complete necessary tasks, Plaintiff's sister left sticky notes throughout his house reminding him to manage his diabetes and shower. Tr. 58. Plaintiff would also go grocery shopping with his sister late at night in order to avoid people. Tr. 59. As for Plaintiff's physical symptoms, Plaintiff discussed his struggles with his weight and its impact on his overall health. Tr. 42, 51–54. This included testimony about his limited mobility and inability to stand for more than ten minutes at a time. Tr. 53–54. Plaintiff also insinuated that he struggled to shower regularly because of his diabetic neuropathy. Tr. 49. At one point, Plaintiff was told that he needed to lose weight because his joints were "falling apart." Tr. 937.

The ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. Plaintiff argues that "the ALJ failed to meet the legal and evidentiary standards to reject [Plaintiff's] testimony." Pl.'s Br. 5, ECF No. 22 (citation omitted).

The Court disagrees because the ALJ gave "specific, clear and convincing reasons" for rejecting Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ first noted that many of Plaintiff's physical symptoms, such as obesity, were unchanging. Tr. 21 (citation omitted). Next, the ALJ discussed Plaintiff's neuropathy in his feet and pointed to multiple parts in the record where Plaintiff presented with normal gait. Tr. 22; *see also* tr. 956, 983, 1152. As for Plaintiff's hypertension, cholesterol, and sleep apnea, the ALJ found that the record suggested Plaintiff's

symptoms were infrequent and "well-controlled." Tr. 22–23; *see also* tr. 332, 697, 910, 924, 1006, 1015, 1153, 1169. Finally, the ALJ concluded that Plaintiff's mental health issues were managed through medication and that Plaintiff demonstrated stable functioning. Tr. 23–24; *see also* tr. 484, 493, 499, 707, 713, 769, 821–24, 1011–12, 1024, 1064–80, 1084–85, 1097, 1182.

Ultimately, the ALJ justified its decision to reject Plaintiff's subjective symptom testimony by thoroughly considering and citing the record. *See* tr. 21–28. And "the [C]ourt will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). In turn, because the ALJ "identif[ied] what testimony [was] not credible and what evidence undermin[ed Plaintiff's] complaints," the Court finds that the ALJ did not err in rejecting Plaintiff's symptom testimony. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted).

## II. Examining Medical Opinion

Plaintiff argues that the ALJ erred in assessing Dr. Scott Alvord's opinion. Pl.'s Br. 16. The ALJ resolves conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Opinions of non-treating or non-examining physicians "may . . . serve as substantial evidence when the opinions are consistent with . . . other evidence in the record." *Thomas*, 278 F.3d at 957.

Dr. Alvord conducted a psychological examination of Plaintiff in 2014. Tr. 1082–95. Dr. Alvord found that Plaintiff suffered from multiple mental health disorders, including major depressive disorder and PTSD. Tr. 1085. Dr. Alvord opined "that Plaintiff's ability to manage a household and care for himself was severely impaired; his ability to follow instructions was moderately impaired; and his ability to concentrate, persista[nce], and pace was moderately to severely impaired." Pl.'s Br. 9 (citing tr. 1084). Dr. Alvord concluded that Plaintiff could not work in any occupation that required social interactions or minimal consistency. Tr. 1085.

The ALJ gave little weight to Dr. Alvord's opinion because it conflicted with other medical opinions in the record and "appear[ed] to be heavily influenced by claimant's subjective reports." Tr. 27. Plaintiff argues that the ALJ's conclusion is unsupported by substantial evidence, but the Court disagrees. As the ALJ noted, Dr. Alvord's opinion conflicted with much of the record. Tr. 812, 1060, 1067, 1102, 1179, 1181. The ALJ also correctly noted that Dr. Alvord's own findings during Plaintiff's examination appear to conflict with Dr. Alvord's ultimate opinion. *See* tr. 1084–85 (noting normal communication and cognition). And finally, Dr. Alvord's opinion was contradicted by other medical opinions. Tr. 75, 105–06.

"If the opinion of an examining physician is contradicted by the opinion of another doctor, it may nevertheless be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (quotation omitted). But "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion [of] an examining physician[.]" *Id.* Despite Plaintiff's claims to the contrary, the ALJ did not only rely upon conflicting medical opinions when weighing Dr. Alvord's opinion. While the ALJ noted how Dr. Alvord's opinion conflicted with other medical opinions, the ALJ also noted that Dr. Alvord's opinion was internally

inconsistent and that it differed from the much of the medical record. *See* tr. 26. By offering multiple reasons for assigning Dr. Alvord's opinion little weight, the Court finds that ALJ put forth "specific and legitimate reasons . . . supported by substantial in the record" and did not err. *Buck*, 869 F.3d at 1050.

## III. "Other" Source Opinion

Plaintiff argues that the ALJ erred in their evaluation of John Warner, Plaintiff's therapist. Pl.'s Br. 19. An ALJ will consider "other source" opinions. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f). If an ALJ discounts competent other source evidence, "the ALJ must give reasons that are germane to each witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (quotation omitted).

Mr. Warner began treating Plaintiff in December 2016. Tr. 995, 1000. Mr. Warner completed two opinion forms where he stated that Plaintiff was unable to function in any work setting. Tr. 996, 998–1000. The ALJ gave little weight to Mr. Warner's opinions for four reasons. Tr. 27. First, the ALJ disregarded Mr. Warner's "[s]tatements describing claimant as 'disabled' . . . [because those] finding[s are] reserved to the Commissioner." *Id.* (citing 20 C.F.R. §§ 1527(e)(1)(3), 416.927(e)(1)(3)). Second, the ALJ pointed to inconsistencies between Mr. Warner's opinions and "the longitudinal record documenting a positive response to treatment and intact mental status." *Id.* (citing tr. 484, 493, 499, 707, 713, 769, 821–24, 1011–12, 1024, 1064–80, 1084–85, 1097, 1182). Third, the ALJ found that Mr. Warner's opinion conflicted with his own notes. *Id.* (citing tr. 1061, 1064, 1067, 1074 (discussing Plaintiff's ability to get along with others and possessing intact mental functioning)). Fourth, the ALJ noted that Mr. Warner began treating Plaintiff seven years after the alleged onset date. *Id.* (citation omitted).

Because the ALJ could reject Mr. Warner's testimony based on inconsistencies with evidence in the record, the ALJ did not err here. *Molina*, 674 F.3d at 1111; *see also Dale v. Colvin*, 823 F.3d 941, 944–45 (9th Cir. 2016). Further, Plaintiff's contention that the ALJ could not discount Mr. Warner's opinion because of when he began treating Plaintiff is unavailing. Pl.'s Br. 21 (citing *Diedrich v. Berryhill*, 814 F.3d 634, 639 (9th Cir. 2017)). Mr. Warner specifically stated that he lacked the knowledge to give an opinion about Plaintiff during the relevant period. Tr. 995, 1000. It follows then that "there was nothing to resolve," so the ALJ did not have a duty to develop the record. Def.'s Br. 18.

## <u>CONCLUSION</u>

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 26th day of March 2021.

 s/Michael J. McShane
Michael J. McShane
United States District Judge